HERMAN SCHLAPKOHL, Appellee, v. O. D. SCHLAPKOHL, Appellant.

PAYMENT: Recovery of Payment—Mistaken Payment of Interest. Interest money which is mistakenly paid on a promissory note as *from date*, when in fact the note called for interest *from maturity*, may be recovered, when the maker paid the interest money on the positive assertion of the cashier of the collecting bank that interest was due from date, and that the maker must pay it.

*Appeal from Tama District Court.*—B. F. CUMMINGS, Judge.

SEPTEMBER 19, 1922.

ACTION to recover a payment of $740 of interest on a note, which payment, as claimed by plaintiff, was made through error and mistake. The court directed a verdict in favor of plaintiff. Defendant appeals.—*Affirmed.*

*Thomas & Thomas,* for appellant.

*C. A. Pratt,* for appellee.

ARTHUR, J.—I. Plaintiff and defendant are brothers. Their father, in distribution of his estate, had given and conveyed to Herman Schlapkohl, plaintiff, 240 acres of land, and plaintiff, by the arrangement of his father, was to and did execute to his brother, O. D. Schlapkohl, two notes in the total amount of $27,000, one note for $12,000 and one for $15,000, to effect division of the property between these two sons. Defendant was not satisfied with the arrangement, which, he claimed, was not an equal division (on account of the land's being valued too cheaply), and the brothers became estranged, and did not speak. When defendant received the notes, he placed them in th Farmers State Bank of Clutier, with M. A. Caslavka, cashier, for collection. The notes were dated July 3, 1919. There is no controversy about the $12,000 note. The $15,000 note signed by Herman Schlapkohl read:

"$15,000                    Dysart, Iowa, July 3, 1919.

"March 1, 1920 after date, for value received .... promise to pay O. D. Schlapkohl or order, fifteen thousand no/100 dollars with interest at the rate of eight per cent per annum from due until paid, payable annually," etc.

On March 1, 1920, the day the $15,000 note was due, the plaintiff appeared at the bank to pay it. The cashier presented the note, and demanded payment of the principal, with interest from the date of the note, July 3, 1919. The defendant had told the cashier that he claimed interest on the note from its date, and directed the cashier to collect interest on it. The defendant was present in the bank, without conversation with his brother, but within hearing distance of his brother and the cashier, when the cashier demanded payment of interest on the note. The plaintiff paid to the cashier the principal of the two notes and interest on the $15,000 note from July 3, 1919, to March 1, 1920, in the sum of $740, and took up his notes.

This action was brought to recover the $740 interest money paid on the $15,000 note. Plaintiff alleged that he paid the principal of the $15,000 note and $740 interest thereon, and that the defendant had received such payments; that the sum of $740 interest did not belong to the defendant, but was the property of plaintiff; and that "the payment of said sum of $740 was an error and mistake," resulting from a computation of interest at 8 per cent on the $15,000 note from July 3, 1919, to March 1, 1920, when, in fact, the said note was not to draw interest, and did not by its terms draw interest.

Answering, defendant, in addition to a general denial, alleged the arrangement whereby the note was given; that he was dissatisfied with the arrangement, and deemed the same unfair and unequal; that the plaintiff was receiving a much larger share of the estate than he was; that the plaintiff was advised of defendant's dissatisfaction regarding the division of property; that a controversy arose between plaintiff and defendant regarding the liability of the plaintiff to pay interest on the $15,000 note; that he (defendant) understood, at the time of the transaction, that he was to have interest upon the note from its date, and that the note provided for the payment of

interest from date; that it was doubtful to both the plaintiff and the defendant, at the time, whether the note provided for interest from date or from its due date, by reason of the manner in which it was written, both plaintiff and defendant having inspected the note, plaintiff claiming that the note was not to bear interest, and that it was written so as not to call for interest until the principal was due; but that, by way of settlement of the controversy, and for the purpose of putting an end to the controversy, the plaintiff had paid the interest, and the defendant received the same in settlement of the said controversy; that, whether the note, in fact, provided for interest from maturity only or from its date (the fact being at the time in controversy), the payment of interest made by plaintiff was a voluntary payment, in settlement of said controversy; and that plaintiff was estopped from recovering said payment.

Under the issues thus made, the case went to trial to a jury. When both parties had rested, plaintiff moved that a verdict be directed in his favor for $740 and interest thereon at 6 per cent, on the grounds that the evidence failed to show any matter to be in controversy between the parties, at the time the $740 interest payment was made; that the evidence failed to show that any dissatisfaction which the defendant claimed he had with the transaction was ever brought to the knowledge or notice of plaintiff; that the evidence submitted by both parties sustained the claim made by plaintiff that the interest payment of $740 was made by mistake, and wholly failed to sustain the defense of voluntary payment on the part of plaintiff by reason of some existing controversy between the parties at the time, and failed to show any grounds of estoppel against plaintiff, to prevent his recovery.

The motion was sustained. By direction of the court, the jury returned a verdict for plaintiff for $740, with 6 per cent interest thereon from March 1, 1920, and judgment was entered on the verdict, from which judgment this appeal is taken.

II. Appellant's assignments of error are that the court erred in sustaining the motion to direct a verdict, because the jury could have found from the evidence that the plaintiff did not make the interest payment by mistake; and because the jury could have found from the evidence that there was a contro-

versy between the parties, at the time of payment, as to whether the note bore the interest demanded, and that plaintiff knew that the note did not bear interest, but paid the interest voluntarily, in settlement of the controversy.

Three witnesses testified to matters of the transaction: the parties and M. A. Caslavka, cashier of the Farmers State Bank, where the notes were paid.

Plaintiff testified that he lived on the 240-acre farm given to him by his father, as tenant of his father, 11 years before his father deeded it to him; that his brother was to have $27,000 out of the farm for his share; that such arrangement was made in July, 1919, by his father; that he was present, but that his brother was not present when the arrangement was made; that he had paid $6.00 an acre rental for the farm for the years 1919 and 1920, and before that, had paid $3.00 an acre; that, after his father had arranged the division, in July, 1919, between him and his brother, by giving him the land and requiring him to pay his brother $27,000, he had a talk with his brother, and his brother was not satisfied with the division; that his brother then asked him if he would pay the whole amount on March 1, 1920, and he arranged to pay both notes on March 1, 1920, and paid them; that he did not talk with his brother about interest on the notes; that his dealing in the payment of the notes and interest was with Caslavka, cashier of the bank; that, when he went to the bank to pay the notes, Caslavka, cashier, said that one note was drawing interest; that he told Caslavka he did not think so, because he was there when they were made, and they were made without interest to the 1st of March; that Caslavka said, "You got to pay that interest,—you can't get out of it;" and that he paid it; that, the next day, he went to F. H. Smith, cashier of the First National Bank of Dysart, who had drawn the notes, and Smith told him that there was no interest on the $15,000 note due on March 1st; that, on the following day, he went back to Caslavka, and informed him what Smith had told him, and asked for a return of the $740 interest he had paid; that his brother was present in the bank when he paid the notes and interest, but he had no talk with him; that the cashier did not say that he was talking for his brother, in making demand of the interest; that Caslavka told him that

the note bore interest; that he did not look at the note particularly; that he did not take the note and look it over; that Caslavka had the note, and just held it up and showed it to him, and said, "It is overdue;" that he knew at the time that it did not bear interest, but paid it; that he paid it because Caslavka told him that he couldn't get out of it, and had to pay it; that he knew at the time that there was controversy between him and his brother, and that his brother was demanding this interest through the cashier; that, after his father and he had looked the matter up, he demanded return of the interest.

M. A. Caslavka, cashier, testified, concerning the $15,000 note:

"It looked as though there was interest from date, and I computed interest from July 3, 1919, to March 1, 1920. The defendant was a customer of the bank. These notes were left for the purpose of collection. The defendant instructed me what to collect. He said one was bearing interest, and to make demand for the note, with interest. I just showed the note to Herman, and he paid it. I told him Otto [defendant] demanded interest on it, and asked him to pay it. I showed him the note. He read it over. He made the remark that it should not bear interest, but he said, 'I guess I will have to pay it.' I don't remember whether I urged Herman [plaintiff] to pay it. I simply said that Otto demanded it. I added this $740 because I read Exhibit B [the $15,000 note] as from date, and it wasn't because of any dispute. The reason for having Herman pay $27,740, instead of $27,000, was that one note [the $15,000 note] read 'interest from date,' and the interest was computed on this note. That was the only reason. I do not know whether I was mistaken. Otto demanded interest from date, and I presented it that way. The claim of interest on the note was never brought to Herman's attention until March 1, 1920."

Defendant testified that he did not know of the division whereby his brother was to have the farm and pay him $27,000 until after the deed was made; that he was not satisfied with the deal,—thought his father had not given him enough,—and told his brother so; that his objection was that the land was valued too cheap; that his brother had been renting the land too cheap; and that, from that time on, there was not good feeling

between him and his brother; that he talked to his father about being dissatisfied with the division, but nothing was said about interest; that he never talked with Herman about the note's drawing interest; that, when he left the notes at the bank for collection, he and Caslavka inspected them. He said:

"I contended at that time that the $15,000 note drew interest from date. I always claimed this. I never talked with Herman about it."

We think that the evidence does not disclose that there was any actual issue or controversy between the brothers, either over the division of property made by their father or over the interest on the $15,000 note: that is, nothing that had taken the form of a legal issue or controversy. The father had made the arrangement that Herman should have the 240-acre farm, and had deeded it to him, and that Herman should pay Otto $27,000, as Otto's share in the farm. According to the father's arrangement, Herman was to and did execute two notes to Otto, one for $12,000, due March 1, 1922, drawing interest at 5 per cent from its date, and another for $15,000, to draw interest at 8 per cent "from due." Otto was dissatisfied over the division of property between him and Herman. Otto complained that Herman had been permitted to occupy the farm for a long period, paying a low rental, and that, in the division, the farm had been valued too cheaply, thus resulting in giving Herman advantage over him in the division; and there arose ill feeling between the brothers, at least on Otto's part, over this division, which he considered unequal, and to the advantage of Herman. The matter of interest on the $15,000 note had never been a subject of controversy between the brothers, nor had it been talked about between the father and Otto. The brothers had no controversy—not even conversation—about the interest, even on the day the interest was paid into the bank. There was nothing presented by either brother to be settled between them. Neither brother had instituted or threatened litigation of any kind, or any other manner of adjustment of differences. Herman went to the bank to pay his notes. Otto was somewhere in the bank, within hearing distance, but not in the immediate presence of Herman and Caslavka, and he and Herman had no conversation. The cashier had calculated interest on the $15,000 note from

its date, amounting to $740, and demanded that Herman pay such interest. The cashier says:

"It looked as though there was interest from date, and I computed interest from July 3, 1919, to March 1, 1920. I added this $740 because I read Exhibit B [the $15,000 note] as *from date*, and it wasn't because of any dispute. The reason for having Herman pay $27,740, instead of $27,000, was that one note [the $15,000 note] read, 'interest from date,' and the interest was computed on this note. That was the only reason. I don't know whether I was mistaken. Otto demanded interest from date, and I presented it that way."

Herman protested, saying that he didn't think the note drew interest from date; that the notes were made without interest to the 1st of March. Herman says the cashier then said: "You got to pay that interest; you can't get out of it." Thereupon, Herman paid the interest. The next day, Herman visited F. H. Smith, cashier of another bank, who had drawn the notes, and Smith told him that the $15,000 note did not draw interest until after March 1st, when it was due; and on the following day, he went back to Caslavka and told him of his conversation with Smith, and asked for a return of the $740 interest he had paid. Herman says that Caslavka showed him the note, held it up in front of him, and said "It is overdue." Herman says that he paid the note because Caslavka told him: "You got to pay the interest; you can't get out of it." It is true that Herman testified that he knew the note did not draw interest from its date. No doubt, such was his belief; but his actual knowledge that the note did not draw interest from its date, but *from due*, was acquired after he had counseled with Cashier Smith, we think.

It is manifest from the evidence that Herman was induced to and did pay the $740 interest because he thought, at the time he made the payment, that the cashier was correct in his interpretation and construction of the language of the note as to payment of interest; and that he believed, at the time, that the statement made by the cashier that the note bore "interest from date" was true; and that he paid the note on account of the mistaken belief, for the time being at least, that the cashier was correct in telling him that the note bore interest from date.

The positive statement of the cashier that the note read "interest from date," and the cashier's positive statement to him, "You got to pay that interest,—you can't get out of it," overcame his own opinion at the time, and caused him to erroneously and mistakenly pay the interest. The language used in the note to express when interest would commence, *"from due,"* of course is susceptible of clear meaning, but is an unusual expression. Men unaccustomed to handling and reading notes might be confused. Especially might plaintiff, who had not seen the note before it was presented to him at the bank, and then, as he says, did not read it carefully, be easily persuaded, for the time being, that the note drew interest from date, by the positive statement of the cashier that it did, and that he would have to pay such interest. There was, in fact, no interest due on the note. There was no negotiation for settlement of any controversy pending between the brothers. Neither had made a proposition of settlement of any controversy. Plaintiff erroneously adopted the cashier's pronouncement that the note bore interest from its date, and through such error and mistake, paid the interest demanded. This, we conclude, appears from the evidence, without conflict.

The trial court did not err in directing verdict for plaintiff and entering judgment on the verdict. The judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.